## McLean County Coal Co. v. August Lamprecht.

1. CARE AND DILIGENCE—*Miners at Work, etc.*—A careful and prudent miner will not willingly and knowingly incur avoidable danger. An injury resulting from such an unwarranted and reckless course could not be made the ground of recovery.

2. NEW TRIALS—*On Findings of Juries.*—Where the verdict of a jury is palpably against the evidence. and so manifestly wrong, the duty of the court to interfere is imperative, and it will be set aside.

**Memorandum.**—Action for personal injuries. Appeal from the Circuit Court of McLean County; the Hon. THOMAS F. TIPTON, Judge, presiding. Heard in this court at the May term, 1893. Reversed and remanded. Opinion filed December 22, 1893.

The opinion states the case.

APPELLANT'S BRIEF, STEVENSON & EWING AND JOHN F. WIGHT, ATTORNEYS.

We ask a reversal of this judgment because there is not sufficient evidence in the record to maintain it; it is so completely against the great preponderance of the evidence that it comes clearly within the rule that the court will grant a new trial when the verdict is the result of prejudice and passion.

APPELLEE'S BRIEF, WILLIAM B. CARLOCK AND KERRICK, LUCAS & SPENCER, ATTORNEYS.

The rule in this State is that the finding of the jury will not be disturbed as against the evidence, where there is

nothing more than a mere doubt as to the correctness of the verdict. Erie & Pac. Dis. v. Stanly, 22 Ill. App. 459; I. C. R. R. v. Cowles, 32 Ill. 116; Marble v. Bonhotel, 35 Ill. 240; O'Rielly v. Fitzgerald, 40 Ill. 310; DeForrest v. Oder, 42 Ill. 500; C. & N. W. Ry. v. Dement, 44 Ill. 74; Baker v. Robinson, 49 Ill. 299; Stevens v. Brown, 58 Ill. 289; Reynolds v. Palmer, 70 Ill. 288.

Nor will the verdict be set aside if the evidence of the prevailing party is of itself sufficient, if believed, to support the verdict. Bush v. Kindred, 20 Ill. 93; I. B. & W. v. Buckles, 21 Ill. App. 181; Fletcher v. Patton, 21 Ill. App. 228; Haldeman v. Sennett, 21 Ill. App. 230; Springfield v. Sieglar, 21 Ill. App. 334; I. B. & W. v. Hinshaw, 21 Ill. App. 335; Forlauf v. Bowlin, 29 Ill. App. 471; Calvert v. Carpenter, 96 Ill. 63; Addems v. Suver, 89 Ill. 482.

The evidence in the case at bar was such that the jury might have found either way; and that being the case, the verdict will not be set aside. Smith v. Williams, 22 Ill. 357; Peoria Grape Sugar Co. v. Frazer, 26 Ill. App. 60; Lewis v. Lewis, 92 Ill. 237; Buchanan v. McLennan, 105 Ill. 56.

MR. JUSTICE BOGGS DELIVERED THE OPINION OF THE COURT.

The action below was a case by the appellee against the appellant company to recover damages for an injury received in appellant's mine, occasioned, as it was alleged, by the negligence and improper conduct of the servants of the appellant.

A trial before a jury resulted in a verdict and judgment against the appellant in the sum of $5,000, from which this appeal is prosecuted.

No stronger statement of the grounds upon which appellee's right of recovery is based can be given, than that made by his counsel in the brief filed in his behalf as follows (except as we have caused it to be italicized) viz:

" The vein of coal in this mine is from three and one-half to four feet thick. The first thing the miner does in the prosecution of his work, is to take the earth or other substance immediately below the coal, out, so as to leave the

coal projecting into the room and hanging over the bed or place where the excavation is made. *A careful miner, when he has dug to any considerable extent, takes a prop, one end of which is placed in the bottom of the room and securely fastened, and the other end is placed against the face of the coal.* That prop, by the miners, is called a 'sprag,' and usually stands at an angle of about forty-five degrees, *and prevents the coal from falling on the miner,* while he is still digging underneath the coal, in case there should be any tendency toward falling or any weakness in the vein of coal at the point he is working. When the miner has dug underneath the coal till he comes to a 'break,' he stops digging and knocks the coal down. That is usually done by placing a wedge in about the center and splitting or breaking off the lower half, which drops down, leaving the top half still supported by the 'sprag.' *When the lower half of the coal is broken up and taken away then the 'sprag' is knocked out* and the upper half drops down, and it in a like manner is broken up and carried away."

"Appellant claims to have had a rule by which miners were forbidden to use railroad ties for 'sprags,' but the evidence clearly shows that it very often happened that the company failed to supply 'sprags,' as it was its duty to supply them, and in all such cases, the miners, without any question from the company, used railroad ties, *i. e.*, ties the company had supplied for laying a track for its coal cars in the bottom of the mine. In addition to the 'sprags' used by the miners, they also used props, which they placed perpendicularly to support the roof of the mine. A few days before the day of the accident, appellee had been unable to procure props, such as the company supplied, and had, therefore, taken some ties to be used by him as props and 'sprags.' He took four of those ties to his room, two of which he placed in an upright position and the third on top of the two as a cap to support the roof of the mine. The fourth he placed as a 'sprag.'"

"On the 19th of December, 1891, appellee went to work about 7 A. M. At that time James Doran was track layer for the company, *i. e.*, it was his business to superintend the

construction and repair the tracks of the company, and for that purpose, of course, had the use and control of the ties. About 10 oclock A. M. Doran went into the room where appellee was at work, and ordered appellee to take the ties out of his room, *i. e.*, the three ties that appellee had placed as props and the one that he had placed as a ' sprag.' Appellee, well knowing the danger of taking them away, refused to comply with the order and told Doran that he could not do it, and thereupon Doran became very angry and said that he would do it if appellee would not, and he said ' G–d d—n Dutch, I will take them away anyhow.' Doran thereupon took his sledge and knocked out all the ties, *including the one used as a* ' sprag,' and loaded them in his cart and took them away, and instead of the four ties, put up a single prop, such as the company supplied for that purpose, *but put up no ' sprag,' thereby leaving the coal wholly unsupported.*" *   *   *

" The coal that appellee had mined, and that was supported by the ' sprag ' in question, was just a little to the left of that track and to the left of the center of the roadway. *After* Doran had taken out the props and ' sprag,' appellee removed some *coal that had been broken down, so as to get it out of the roadway, and then started to go toward the east for the purpose of getting his tools to make the coal secure. In order to do so it was necessary for him to pass close to the face of the coal, and while doing so, the coal fell down, catching appellee's left leg and breaking and crushing it, as above stated.*"

The alleged wrongful and negligent conduct of appellant's track layer, Doran, is that he took away the tie used as a " sprag " and put up no " sprag," thereby leaving the coal wholly unsupported, so that it fell upon the appellee as he was passing by for the purpose of getting his tools to make it secure.

The appellant company denied that Doran took away any tie or prop that was in use as a " sprag " to support the coal and further denied that any tie was so in use, and also denied that the appellee was injured while passing near the coal in

McLean County Coal Co. v. Lamprecht.

order to get his tools, but asserted that the appellee, when hurt, was negligently and recklessly "splitting down" the lower half of the vein of coal without having a prop or "sprag" in place to support the upper half.

The only proof that Doran took away a "sprag," or any tie used as a sprag, was the unsupported testimony of the appellee. In this he was directly contradicted by Doran and by John Dugan, the latter of whom assisted Doran in the removal of all ties that were taken. Both of these witnesses deny that any tie used as a "sprag" was taken. Doran testi_fied that no tie was so in use and Dugan swore that he was there and assisted in removing all the ties that were taken and that he did not see any tie in use as a sprag. So unless there was some reason for discrediting these witnesses the preponderance of the evidence upon this point was against the appellee.

The assertion of the appellee that the coal fell upon him as he was passing by the face of the vein on his way to get his tools, had no support except his own testimony to that effect.

Chas. Roline, who, at the time the appellee was injured, was mining within a few feet of him, testified that he saw the appellee at work driving a wedge into the vein of coal with a sledge hammer, immediately before the coal fell; that he heard the coal fall, went at once to appellee, found him under the coal, his sledge hammer on the ground immediately in front of and but about one foot away from him, his pick by his side and partly under the fallen coal. Doran, Quanstran, Buckle and Mumber, witnesses for the appellant, testified that they came at once to the assistance of the appellee and aided Roline in removing him from under the coal and that they saw the pick there partly hidden by the coal. It would seem utterly unreasonable to insist that all these disinter-ested witnesses should be discredited and the testimony of the appellee, interested as he is in the result of the suit, ac-cepted as sufficient to outweigh them all. Yet unless this is done, it must be clear that the coal did not fall upon the appellee as he was passing by on the way to get his tools,

but that he had his tools and caused the coal to fall by driving a wedge into the vein and breaking it down when it was not supported by a sprag. Other facts uncontestably proven ought, it seems to us, have put it beyond controversy that the appellee was wedging and breaking down the coal when it fell upon him.

He testified as follows:

Q. Then what did you do when they took away the ties?

A. I went and got a car and pushed it in on the face of the coal; then I put a chunk of coal in, and then went to get my tools.

Q. How long was it after Mr. Doran went away before you were hurt?

A. Right away; I took the car and came in right away and went in.

Q. Was it an hour or ten minutes?

A. No, sir; I took the coal car and went in and put one chunk of coal on the car, and then wanted to fix them solid where he took the ties away.

Q. How long was it after Doran went away before you got hurt—after Doran and Dugan went away with the ties?

A. Maybe a minute, or maybe a little bit longer; I backed up the car and threw a chunk into the car and went right for my tools; the tools were about ten feet from the car.

The witnesses who hastened to appellee's assistance after extricating him from the coal intended to put him in the car referred to in his answer, in order to convey him out of the mine, but found it partially loaded with coal—perhaps one-third full—so that they could not use it for the purpose, but had to move it away and bring in an empty car in which to place him. This they did and thus brought him to the shaft of the mine. The quantity of coal in the car could only be accounted for upon the theory that after Doran went away appellee brought in the car and proceeded to mine and break down the coal and load it in the car and so continued until the coal fell upon and injured him and is absolutely irreconcilable with the appellee's theory and testimony that

he brought in the car, threw one chunk of coal into it and then went to get his tools and was hurt while making his way to them. Another fact. established by the testimony of appellant's witnesses and also by Berry, a witness for the appellee, and denied only by the appellee, not only tended to discredit the appellee as a truthful and reliable witness, but also added its weight to the appellant's contention that appellee, when hurt, was and for some time before had been engaged in mining, wedging and breaking down the coal, and had, after Doran left him, mined and loaded into the car the coal found to be in it. The fact referred to is that the appellee was hurt one hour and a quarter after Doran and Dugan went away with the ties. Appellant's witnesses and Berry, a witness for the appellee, so testified, while appellant testified, as is seen by his answer to the last question hereinbefore, that " it was only a minute or may be a little bit longer." The time that elapsed after Duran took the ties and the quantity of coal in the car, confirmed appellant's contention, already well established, that appellee was mining and breaking down coal when hurt.

All concede, and so it is stated by appellee's counsel, that a careful and prudent miner would not undertake to split and break down coal with a wedge without first securing it with a " sprag." To do so would be to willingly and knowingly incur avoidable danger. An injury resulting from such an unwarranted and reckless course could not be made the ground of recovery, even had the appellee been improperly deprived of a sprag by appellant's servant, Doran. But as we have seen, the preponderance of the evidence is that Doran did not remove the " sprag."

It was the duty of the appellee to put the sprag in position. His counsel say in the statement quoted: " A careful miner, when he has dug to any extent, takes a prop, one end of which is placed at the bottom of the room and securely fastened, and the other end placed against the face of the coal. This prop is called a sprag, and prevents the coal from falling on the miner."

Because such was his duty he sought to establish that he was

not mining or breaking down the coal when hurt, and endeavored to show that Doran took away the sprag and that the coal fell upon him while he was passing near it, on his way to get his tools " to make the coal secure," and this made necessary the claim that he was injured, " may be a minute or a little bit longer," after Doran left him. In all these respects the evidence preponderated against him.

We recognize in its fullest extent the rule that great weight is to be accorded to the findings of a jury, but here the verdict is so palpably against the evidence, and so manifestly wrong, that our duty to interfere is imperative.

A new trial should have been granted the appellant company. Because it was refused, the judgment must be and is reversed, and the cause remanded.